IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFERY L. HINTON, ) | |
| ) | |
| Plaintiff/Appellee, ) | |
| ) | Case No. 09 C 6920 |
| v. ) | |
| ) | Adversary No. 09 A 621 |
| UNITED STATES OF AMERICA, ) | Bankr. Case No. 09 B 14301 |
| ) | |
| Defendant/Appellant. ) | |

**OPINION AND ORDER**

This appeal is from an interlocutory order of the bankruptcy court denying the motion of the United States to dismiss Adversary Proceeding No. 09 A 621 brought by Jeffery L. Hinton, the debtor in Bankruptcy Case No. 09 B 14301. The debtor filed the adversary proceeding on July 23, 2009 to obtain a determination that a tax liability owed to the Internal Revenue Service for the years 1996 through 2005 was not excepted from discharge under § 523(a)(1) of the Bankruptcy Code.[1] The United States (herein "the IRS") moved to dismiss for lack of jurisdiction, arguing that there is no case or controversy permitting the court to assume jurisdiction or, alternatively, if the court has jurisdiction, it should abstain for prudential reasons. The bankruptcy court denied the motion on October 9, 2009. The IRS timely moved for leave to appeal pursuant to 28 U.S.C. § 158(a)(3). This court granted leave to appeal (Dkt. No. 7).

The bankruptcy court's subject matter jurisdiction is received from the district court,[2]

---

[1] All statutory references herein are to the Bankruptcy Code, title 11, United States Code, unless otherwise indicated. All references to Rules are to the Federal Rules of Bankruptcy Procedure unless otherwise indicated.

[2] The case was originally referred to the bankruptcy court under 28 U.S.C. § 157. The adversary proceeding is proper under Rule 7001(6). It is a core proceeding in which the bankruptcy court had

whose jurisdiction is conferred by 28 U.S.C. § 1334(a). This court reviews appeals from the bankruptcy court as authorized at 28 U.S.C. §§ 158(a). Appellate review of a bankruptcy court's determination of jurisdiction is a question of law subject to de novo review. *See Matter of FedPak Sys., Inc.*, 80 F.3d 207, 211(7th Cir. 1996) ("Whether FedPak had standing in the bankruptcy court is a question of federal statutory and constitutional law that we review *de novo*.").

## FACTS[3]

Hinton petitioned for relief under chapter 7 of the Bankruptcy Code on April 22, 2009. His schedule of liabilities included federal tax obligations for 1996 through 2006, and 2008, amounting to approximately $33,000.00. On June 22, 2009, the trustee filed a report of no assets. No claims were filed or administered. The debtor was discharged August 17, 2009. Promptly thereafter, the IRS filed Certificates of Release of Federal Tax Lien for the years 1996 through 2004, inclusive (as well as for all prior years). The IRS had filed no tax lien respecting the year 2005, so no notice of release of a lien was required, leaving Hinton, irrespective of the discharge, with a zero balance on the IRS's books and no present or known prospective threat of collection of any of the tax liability.

Hinton's complaint alleges that all required returns had been timely filed and the liability had been listed on his bankruptcy schedules. Because no return was fraudulent, nor had Hinton willfully attempted to evade the taxes, *see* § 523(a)(1)(C), he alleged, the debt was dischargeable under § 523(a)(1). The IRS agreed to stipulate that the debt was not excepted from discharge

---

authority to enter the order under review. *See* 28 U.S.C. § 157(b)(2)(I).

[3] The facts are undisputed.

under § 523(a)(1)(A) and (B) but reserved the right to rely on subsection (C) if it later discovered evidence that plaintiff had willfully attempted to evade or defeat his tax liability.[4]

Representing that it had no facts indicating that the debt is excepted from discharge, that it would affirmatively abate the tax upon the debtor's discharge, and that it had no present intention of investigating the debtor concerning the liability, the IRS moved to dismiss for lack of jurisdiction, arguing that the case does not present a case or controversy, a requirement imposed by Article III, section 2 of the Constitution. Alternatively, the IRS argued, if a case or controversy exists, the court should for prudential reasons decline to exercise jurisdiction for lack of "ripeness." Hinton characterized the issue as one of standing or ripeness; in either event, he contended he has a real and personal stake in the litigation that would justify exercise of the court's remedial powers on his behalf. Without a judgment that the debt is dischargeable, he argues, the debt will hang over his head, and if the IRS should seek collection in the future, he may incur further costs associated with reopening the proceeding, evidence would be stale or inaccessible, and his "fresh start" could be nullified.

The bankruptcy judge denied the motion to dismiss, reasoning that inasmuch as the IRS had taken action prepetition to collect from Hinton (by sending a prepetition demand for

---

[4] A declaratory judgment of dischargeability on Hinton's complaint can only be set aside under Rule 60(b), Fed. R. Civ. P., as applicable through Rule 9024, *i.e.*, through a motion brought within one year of the judgment and based on newly discovered evidence that the IRS, having used reasonable diligence, could not have discovered before judgment was entered.
   The IRS is concerned that predischarge declaratory judgments of dischargeability entered at the request of debtors would place an onus on the IRS to diligently investigate every tax debtor on pain of being barred from ever obtaining a determination that a tax liability should have been excepted from discharge where it later discovers concealed assets or fraud. Multiplied by many such judgments throughout the bankruptcy system, the burden would be large and the use of resources in the effort highly inefficient.

payment), and the tax liability was Hinton's primary reason for filing the petition, a justiciable controversy existed.

**ANALYSIS**

Jurisdiction depends on the facts at the time the complaint is filed, not on subsequent events. *Doctors Nursing & Rehab. Ctr.* v. *Sebelius*, 613 F.3d 672, 677 (7th Cir. 2010).[5] Whether characterized as case or controversy, standing, or ripeness, the issue is one of justiciability. Justiciability, as Justice Frankfurter described it, is "not a legal concept with a fixed content or suspectible of scientific verification. Its utilization is the resultant of many subtle pressures, including the appropriateness of the issues for decision . . . and the actual hardship to the litigants of denying them the relief sought." *Poe* v. *Ullman*, 367 U.S. 497, 508-09, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961). If no actual controversy exists between the parties regarding the subject on which declaratory judgment is sought, the court lacks subject matter jurisdiction. *Aetna Life Ins. Co.* v. *Haworth*, 300 U.S. 227, 239-40, 57 S. Ct. 461, 81 L. Ed. 617 (1937). The boundary of jurisdiction under the Declaratory Judgment Act is where "the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.* v. *Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (quoting *Md. Cas. Co.* v. *Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)). A declaratory judgment "may not be made the medium for securing an advisory opinion in a controversy which has not arisen." *Coffman* v. *Breeze Corp.*, 323 U.S. 316,

---

[5] While primarily encountered when determining whether diversity jurisdiction exists, the rule is not limited to such situations. *Doctors Nursing & Rehab. Ctr.*, 613 F.3d at 677.

4

324, 65 S. Ct. 298, 89 L. Ed. 264 (1945). Furthermore, even if a justiciable controversy has been shown to exist, federal courts have discretion to decline to exercise their jurisdiction. *Int'l Harvester Co.* v. *Deere & Co.*, 623 F.2d 1207, 1217 (7th Cir. 1980). The declaratory plaintiff bears the burden to establish, by a preponderance of the evidence, that the two-part test for an actual controversy has been met. *See McNutt* v. *Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936) ("[T]he court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.").

Similarly, standing requires (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations omitted) (internal quotation marks omitted). A particularized injury is one affecting the plaintiff in a "personal and individual way." *Id.* at 560 n.1. While a plaintiff's injury may turn "on the nature and source of the claim asserted," *Warth* v. *Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975), the merits of the suit should not be conflated with the standing inquiry. *Aurora Loan Servs., Inc.* v. *Craddieth,* 442 F.3d 1018, 1024 (7th Cir.2006).

Standing's cousin, ripeness, "is a doctrine of justiciability 'invoked to determine whether a dispute has matured to a point that warrants decision.'" *Giger* v. *Ahmann,* No. 09 CV 4060, 2010 WL 2491025, at *3 ( N.D. Ill. June 15, 2010) (quoting13B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2532 (3d ed.2008)) "Inquiries into ripeness generally address two factors: first, whether the relevant issues are sufficiently focused so as to

5

permit judicial resolution without further factual development; and, second, whether the parties would suffer any hardship by the postponement of judicial action." *Triple G Landfills, Inc.* v. *Bd. of Comm'rs*, 977 F.2d 287, 288-89 (7th Cir. 1992) (internal citations omitted).[6]

A straightforward application of the facts here to the elements of proof demonstrates Hinton's lack of standing. Hinton has no injury in fact. After the bankruptcy petition was filed, IRS did not take, nor could it have taken, any action to collect the tax due. It did not as much as file a claim against the estate. The discharge would later operate as an injunction against the IRS's attempting to collect. §524(a)(2). In other words, there is no substantial controversy between the parties of any immediacy or reality. There were insufficient facts to permit the court to resolve the hypothetical dispute. Indeed, Hinton admits that his only harm is his concern that the debt might in the future be revived, which could then require him to incur the expense of asserting the discharge as a complete defense.

Nonetheless, the existence of Rule 4007, which permits Hinton to file a complaint to determine dischargeability "at any time," lends some support to Hinton's position. Although no reported appellate decisions have addressed the issue as it relates to § 523(a)(1)(C), two bankruptcy courts have done so. In *Mlincek* v. *United States*, 350 B.R. 764 (Bankr. N.D. Ohio 2007), the court held in circumstances virtually identical to the instant case that a case or controversy existed, but it declined for prudential reasons to exercise jurisdiction, relying on the doctrine of ripeness. *Id.* at 767-68. In *Dunn* v. *California*, 2008 WL 4346454 (Bankr. E.D. Cal. Sept. 15, 2008), the court ruled that where a taxing entity opposed a debtor's complaint to

---

[6] "A distinction is sometimes drawn between constitutional ripeness and prudential ripeness. While constitutional ripeness contemplates a presently existing dispute, prudential ripeness has been characterized as a judicially created tool for avoiding decisions in cases that lack an optimal factual setting." *In re Liescheidt*, 404 B.R. 499, 500 (Bankr. C.D. Ill 2009) (internal citations omitted).

6

determine dischargeability and at the same time sought on a motion for summary judgment a ruling that any post-petition tax assessment is not discharged, a justiciable controversy existed and was ripe for determination. Both of these cases withstand the justiciability test, the first court abstaining for prudential reasons and the second finding a real and sufficiently immediate threat to the debtor's legally protected interest to satisfy jurisdictional requirements.

The other cases Hinton cites make reference to the fact that a complaint to determine the dischargeability of a debt may be filed at any time, but none addresses the issue of justiciability presented here. *In re Higgins*, 161 B.R. 993 (Bankr. W.D. Mo 1993), however, reached the same practical result as *Mlincek* by deferring the matter. There the court declined to entertain a debtor's motion to reopen his case to determine dischargeability where it appeared unlikely that the claimed debt would be excepted from discharge. (The court did suggest that either party could proceed under Rule 4007 to obtain a determination under § 523(a) at any time).

Bankruptcy courts have adjudicated dischargeability complaints in pending chapter 13 cases, but with one exception these cases included a finding that determination of dischargeability could affect the distribution of payments under the plan, a factor not present in a chapter 7 situation. *See, e.g.*, *In re Craine*, 206 B.R. 598 (Bankr. M.D. Fla. 1997) (appropriate to determine dischargeability of tax liability before completion of the plan where IRS did not file proof of claim, the confirmed plan did not provide for distribution to the IRS, and debtors contended that early resolution would enable them to modify their plan should the debt be owed so as to avoid accrual of interest and penalties); *United States* v. *Clavelle*, Civ. A. No. 93-2059, 1994 WL 780695 (W.D. La. Dec. 8, 1994) (bankruptcy court decision determining dischargeability of debt before plan was completed was not premature because Rules permit such a complaint to be

7

brought at any time)[7]; *Border* v. *IRS*, 116 B.R. 588 (Bankr. S.D. Ohio 1990) (where chapter 13 trustee was about to distribute payments under the plan, the debtors contended that the IRS was not entitled to payments because it had not filed a proof of claim, and the IRS contended it was not required to file a proof of claim, a case or controversy existed "since this decision will impact directly on the amount of funds available for distribution pursuant to the confirmed plan")[8]; *In re Malin*, 356 B.R. 535 (Bankr. D. Kan. 2006) (the "at any time" provision suggests matter is ripe, early resolution would allow debtors to modify their plan to propose paying the tax liability and avoid additional interest and penalties, and "the facts that control the dischargeability of the IRS's claims have already occurred, another indicator of fitness of the issue for judicial consideration"); *see also In re Hoffer*, 383 B.R 78 (Bankr. S.D. Ohio 2008) (determination before completion of plan that student loans were dischargeable under hardship provision was ripe for decision). The Eighth Circuit, however, in *In re Bender*, 368 F.3d 846 (8th Cir. 2004), ruled that the issue of whether a debtor's student loan could be discharged on the basis of undue hardship was not ripe for adjudication because the factual question is whether there is undue hardship at the time of discharge, not at the time a § 523(a)(8) proceeding is commenced.

Principles of justiciability, whether it be called case or controversy, standing or ripeness, point to the conclusion that the bankruptcy court did not have jurisdiction here. Rule 4007 is a rule of procedure. Unlike a typical court case where, for example, a defendant could not file a claim or defense or challenge a judgment after a particular amount of time passes (*see* Fed. R.

---

[7] The court dismissed the IRS's argument that this interpretation leads to a waste of judicial and governmental resources, stating it "should be addressed to Congress instead of this Court." 1994 WL 780695, at *1.

[8] The opinion does not indicate that the IRS argued that decision was premature or not justiciable. Rather, the court made its own threshold determination.

Civ. P. 59 and 60), this rule permits filing of a dischargeability complaint at any time. As the IRS's brief explains, Rule 4007(b) permits a debtor who is being (wrongfully) pursued by a creditor to assert the discharge as a complete defense in a law suit, or for either debtor or creditor to return to the bankruptcy court to obtain a determination that the debt was or was not discharged. Until such a real dispute arises, however, invasion of the legal protection of the automatic stay and the discharge injunction is only hypothetical and conjectural. The court lacks jurisdiction over the subject matter of the adversary complaint.

**CONCLUSION AND ORDER**

For these reasons, the bankruptcy court's order denying the United States's motion to dismiss is reversed. The case is remanded with directions to the bankruptcy court to dismiss the adversary complaint without prejudice.

Dated: May 12, 2011         Enter: _____
                                   JOAN HUMPHREY LEFKOW
                                   United States District Judge